YELVERTON, Judge.
Billy Ray Cooper filed a petition against his wife, Audrea Cooper, to partition the community, by authority of La. Civil Code art. 2374, alleging that she had mismanaged the community affairs. From a judgment terminating the community, Audrea appeals. The sole issue presented is whether the trial court erred in finding as a fact that the community was threatened to be diminished by the disorder of the affairs of the spouse Audrea, or by her fraud, fault, neglect or incompetence. Findings of fact should not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Finding no error, we affirm.
La. Civil Code art. 2374, under which the suit was brought, states as follows:
“When the interest of a spouse in a community property regime is threatened to be diminished by the fraud, fault, neglect, or incompetence of the other *617 spouse, or by the disorder of the affairs of the other spouse, he may obtain a judgment decreeing separation of property.”
The next article explains the effect of a judgment decreeing separation of property and its effective date. Civil Code art. 2375 reads:
“A judgment decreeing separation of property terminates the regime of community property retroactively to the day of the filing of the petition, without prejudice to rights validly acquired in the interim between filing of the petition and rendition of judgment.”
Billy Ray’s suit was tried in two phases. In the first phase the court ordered that the community between the parties be terminated retroactively to the date of filing the petition in accordance with Civil Code art. 2375. It is from that judgment that this appeal was brought. The second phase of the case was tried later and the trial court partitioned the property. The defendant filed a separate appeal from the partition judgment, but this court dismissed that appeal for the reasons reported in Cooper v. Cooper, 502 So.2d 581 (La.App. 3rd Cir.1987). Thus all that is before us now is a review of the factual basis for the judgment decreeing a separation of property.
Billy Ray Cooper testified that his wife Audrea managed the business affairs of the community. She paid most of the bills, managed the household, and ran the community business, a retail store known as the Cowboy Stopp. He testified that shortly before he filed this suit, he found out that he was personally liable on several bank notes the existence of which he had not been aware. The promissory notes had his signature on them, but he swore he had not signed them. He learned that his wife had signed his name on the notes, and he denied ever giving her permission to do that. He also discovered that his wife had been writing checks in his name on his personal checking account without his authority. In the latter part of 1982, after the separation suit had been filed, he discovered that his wife had obtained three loans in his name from the Beaumont Telephone Credit Union totalling $24,500. He declared that he did not sign the loan papers and that he had no knowledge that his wife had incurred these debts. His wife also secured a loan by mortgaging a truck. She signed his name to those papers without his authority. She had also made several loans from her sister and their son without his knowledge. In managing the Cowboy Stopp from 1981 to July 1982 she wrote 101 overdraft checks. When he took over the management of the business the corporation owed almost $32,-000 in federal income tax for the years 1982 to 1984. His wife had failed to file a tax return in 1981; that year they would have gotten a refund of over $10,000. By the time the IRS caught up with them on that return, the right to a refund had prescribed. They also owed over $600 in state income taxes. Billy Ray acknowledged that his wife had limited authority to sign checks for routine household maintenance, but he denied ever giving her authority to sign his name to promissory notes.
Gayla Vincent, an employee of the Internal Revenue Service, corroborated the testimony of Billy Ray that the 1981 tax return had not been filed. Ms. Vincent testified and it was stipulated by Ms. Cooper’s attorney that there is a three year prescriptive period for filing a tax return after which any refund owed is not collectible. Ms. Vincent testified that the Coopers had missed the three year deadline by failing to file their 1981 return until March 21, 1985. Ms. Vincent further stated that at the time of trial, an assessment of the Coopers’ taxes for the years 1982, 1983, and 1984 was approximately $30,000.
Glen Bertrand, a Vice President of First National Bank of Lake Charles, testified that Audrea applied for a loan in Billy Ray’s name after the parties had separated.
Alma Brown, a Vice President of Calca-sieu-Marine National Bank, stated that Au-drea always asked permission to take the promissory notes home for her husband to sign. The bank let her do it, since the Coopers had been long-time customers. The bank, according to this witness, would have required a power of attorney from Billy Ray had they known she was signing for her husband.
*618 Audrea admitted signing her husband’s name to his checks and to the various promissory notes and loans. However, she claimed that her husband had given her advance approval for whatever was necessary to maintain the business. She stated also that he knew of the loans and checks. It was her testimony that she thought she had mailed her 1981 tax return. Audrea also presented evidence that Billy Ray had gambled sums of money and had not been prudent with his money.
Where there is conflicting testimony a reviewing court must give great weight to the factual conclusions of the trier of fact. Reasonable credibility evaluations and reasonable inferences of fact should not be disturbed. Till v. Delta School of Commerce, Inc., 487 So.2d 180 (La.App. 3rd Cir.1986).
The judgment indicates that the trial court believed Billy Ray when he testified that he had no knowledge of the transactions by his wife and that they were done without his authority. Based on this credibility evaluation and the testimony, the trial court concluded that Billy Ray had “carried his burden of proof under Louisiana Civil Code Article 2374.” We regard this as a finding that the interest of Billy Ray in the community property regime was being threatened to be diminished by Au-drea’s conduct, sufficient to decree a separation of property. We find no manifest error in this factual determination.
Audrea also argues her appeal from the standpoint that the suit was based on her alleged mismanagement of the business, the Cowboy Stopp, and not on any mismanagement of the community. That is not so: the checks written on Billy Ray’s personal account as well as the loans and notes made, were personal dealings in Billy Ray’s name. They were not loans, checks or promissory notes in the corporation’s name.
The judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.